# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA,
## WESTERN DIVISION

IN RE:

GERTHIA L. STERLING,                    BK 00-71700-CMS-13

    DEBTOR.

GERTHIA L. STERLING,                    AP 05-70060-CMS

    PLAINTIFF,

vs.

CENTERONE FINANCIAL SERVICES, LLC;
MITSUBISHI MOTORS CREDIT OF AMERICA, INC.;
and OMNI RECOVERY SERVICE OF ALABAMA, INC.,

    DEFENDANTS.

## <u>MEMORANDUM OF DECISION</u>

This matter is before the court on creditor/defendants' request that this federal Bankruptcy Court try this removed lawsuit. The debtor opposes the reopening of her bankruptcy case, and trial of her state law complaint in federal court. She seeks remand to state court where she filed suit. The court finds it can exercise subject matter jurisdiction of this lawsuit under 28 U.S.C. § 1334(b) without reopening BK 00-71700, and that it is appropriate to do so. For the reasons stated below, debtor's motion to remand is to be **DENIED,** and the creditors motion to reopen is due to be **DENIED.**

1

## FINDINGS OF FACT

Facts relating to Gerthia L. Sterling's bankruptcy case come from the court's records in bankruptcy case 2000-71700-CMS-13. The facts relating to the post discharge repossession of Ms. Sterling's automobile are those alleged in the parties' pleadings. Gerthia L. Sterling, an employee of a nursing home in Northport, Alabama, purchased a new Mitsubishi Mirage on credit from Contemporary Mitsubishi in Tuscaloosa, Alabama in 1999. (See Proof of Claim No. 1) Defendant Mitsubishi Motors Credit of America LLC was the assignee of payment rights in the loan secured by the new car.

The following year, on July 18, 2000, Sterling filed a Chapter 13 petition with this Bankruptcy Court. (BK Doc. 1). The filing included Sterling's Chapter 13 Plan Summary. Paragraph II(B) of her plan provided "The holder of each SECURED claim shall retain the lien securing such claim until a discharge is granted and such claim shall be paid in full with interest at a rate of 10% per annum in deferred cash payments as follows:", and then, in paragraph II, it listed the secured creditors to be paid. Mitsubishi Motor Company was scheduled with the debtor estimating the total amount of the debt at $15,454.00, and the value of their collateral (a 1999 Mitsubishi Mirage) at $15,454.00. She did not attempt to bifurcate the value of the car under Section 506(a) to reduce the secured claim. Her plan proposed to grant the creditor a fixed payment of $353.07 at 10% interest, a lower interest rate than provided in the original contract. Under paragraph D, Special Provisions, the debtor's plan proposed "to pay Mitsubishi Motor Credit in 55 months as set out above."

On August 3, 2000, Mitsubishi Motors Credit Company of America, Inc., through counsel, filed its Claim No. 1 for a total amount of $19,278.64. Exhibit A to the claim itemized this total

2

amount and explained "secured claim is based on a present value of $15,414.27, capitalized at 10% (the rate proposed in the plan) for 55 months, resulting in monthly payment of $350.52 and a future value of $19,278.64." Exhibit A to Mitsubishi's claim evidenced that the actual amount of the debt was slightly less than the debtor's estimate for the plan. When paid at the 10% interest proposed in the plan over 55 months, the fixed payment to amortize the debt would be only $350.52 a month.

The court entered an order confirming the plan September 28, 2000. (Bk Doc. 7). Paragraph 2 of the confirmation order provided that "Secured creditors shall retain their liens securing such claim until such time as the filed and allowed claims of such creditors are paid under the terms of the Debtor's plan and said liens are released upon completion of the plan as confirmed or as amended." Paragraph 4 of the confirmation order further provided that "property of the estate shall not vest in the debtor until a discharge is granted under Section 1328 or the case is dismissed. ..."

Mitsubishi neither objected to the confirmation of the debtor's plan nor appealed the confirmation order.

On August 8, 2005, almost five years after Sterling's plan was confirmed, defendant CenterOne Financial Services, LLC (CenterOne, hereinafter the designation of both CenterOne and Mitsubishi) filed a notice that it had "acquired servicing of the loan" which was the basis of Mitsubishi's original claim as filed August 3, 2000. The notice further directed the Chapter 13 Trustee to transfer the claim and future payments to CenterOne (BK Doc. 15).

Shortly thereafter, on August 16, 2005, Chapter 13 Trustee C. David Cottingham filed a notice of withdrawal of the deduction order to the debtor's employer for the $186.00 bi-weekly plan payments, indicating that Sterling had remitted through her deduction order sufficient funds to pay out her case. (BK Doc. 16) Cottingham later stated he sent the last payment due on the car to

3

CenterOne in August of 2005.

On September 6, 2005 the trustee filed his certification of plan completion (BK Doc. 17). Trustee's certificate stated "...that upon information and belief, the Debtor has completed the Chapter 13 Plan. Accordingly, pursuant to 11 U.S.C. Section 1328(a), the Debtor is entitled to a discharge. The Trustee will file a Final Report and Account when all payments to creditors have cleared his bank account. The Trustee requests that the Court keep the case open pending receipt of the Final Report and Account."

On September 6, 2005, the Bankruptcy Court granted Sterling a discharge of personal liability for the debts provided for in her plan – including the creditor's allowed secured claim as to her vehicle. (BK Doc. 18) Both CenterOne and Mitsubishi were served with copies of the discharge order. (BK Doc. 19) No party appealed or disputed the order. After it became final, the file of the Sterling case was placed on the administrative track for formal closing.

Sterling alleges that on September 29, 2005, post-discharge, CenterOne, as agent for Mitsubishi, sent a demand letter directly to her seeking further payment. The creditor followed up with additional collection calls, as alleged by Sterling's **OPPOSITION TO MOTION TO REOPEN CHAPTER 13 BANKRUPTCY** (BK Doc. 28). Then, Sterling stated, the defendants repossessed her car on October 12, 2005.

On November 15, 2005, Sterling sued CenterOne, Mitsubishi, and Omni Recovery Service of Alabama under state law in Jefferson County Circuit Court, asking for trial by a struck jury. Sterling alleged that the following events took place after notice of her discharge was entered:

> After the discharge, Mitsubishi Credit and CenterOne made repeated attempts to collect from Sterling. They began sending her bills and making collection calls, threatening to repossess her car if she did not pay a balloon payment she allegedly owed on the car (even though all

4

debt owed on the car was satisfied and discharged in the bankruptcy). When the calls and bills did not stop, Sterling called her Chapter 13 lawyer, Eric Wilson, for help. Mr. Wilson spoke with representatives of CenterOne, specifically instructing them that they could take no action against Ms. Sterling and that the debt had been discharged, and reminding them that CenterOne and Mitsubishi Credit had actual knowledge of the discharge and satisfaction because their counsel had been served with the discharge order.

See AP Doc. 8, Sterling's **MOTION TO REMAND or ABSTAIN and MOTION TO EXPEDITE CONSIDERATION of SAME.**

The debtor contends in this pleading and in the complaint removed from Jefferson County, that, following Wilson's call, CenterOne and Mitsubishi dispatched co-defendant Omni Recovery Services to repossess her car from the lot of the nursing home where she works. According to Sterling's allegations, Omni towed the car to a Jefferson County location (approximately 50 miles from this area) with personal items, including her purse, still inside; and that the vehicle had not been returned to her possession.

In her state lawsuit, she sought actual/compensatory, as well as punitive, money damages for the alleged circumstances of the repossession, based on state law causes of action. She did not sue on the basis of bankruptcy law, nor cite any other federal cause of action. Her bankruptcy case remained open at that point, but the normal procedures of case closing after discharge were proceeding in due course. No pleading was filed to halt that process in this court.

Chapter 13 Trustee Cottingham entered his final report in Sterling's Chapter 13 case on December 2, 2005, stating that his office had paid CenterOne/Mitsubishi a total $19,278.64 on its secured claim. (BK Doc. 20). On December 16, 2005, the Bankruptcy Court formally closed Sterling's bankruptcy case and discharged the trustee. (BK Doc. 23). At the time the bankruptcy case was formally closed, none of the defendants had answered the complaint in the Jefferson County lawsuit.

5

Instead of answering in state court, CenterOne and Mitsubishi on December 19, 2005 removed the state court lawsuit to this court under 28 U.S.C. § 1452 and Fed. R. Bankr. P. 9027. (AP Doc. 1) The creditors did not contend that any other bridge to federal jurisdiction existed. They did not seek removal to district court under 28 U.S.C. § 1441 for general federal question or diversity jurisdiction in the 30-day period allowed for doing so.[1] (Mitsubishi had filed a consent and joinder in the removal as well. CenterOne stated in its pleadings that Omni's consent was not required, since it had not been served in the Jefferson County case.[2])

On December 22, 2005, CenterOne answered Sterling's state law complaint in Bankruptcy Court, denying any liability to the debtor. Mitsubishi moved to dismiss the complaint as failing to state a claim on which relief could be granted. Generally, CenterOne, joined by Mitsubishi, argued in pleadings that the federal theory of "complete preemption" of state law by federal statute limited

---

[1] **28 U.S.C. 1446** provides the following:

(a) A defendant or defendants desiring to remove any civil action or criminal prosecution from a State court shall file in the district court of the United States for the district and division within which such action is pending a notice of removal signed pursuant to Rule 11 of the Federal Rules of Civil Procedure and containing a short and plain statement of the grounds for removal, together with a copy of all process, pleadings, and orders served upon such defendant or defendants in such action.

(b) The notice of removal of a civil action or proceeding shall be filed within thirty days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based, or within thirty days after the service of summons upon the defendant if such initial pleading has then been filed in court and is not required to be served on the defendant, whichever period is shorter.

[2] Chief Judge Albritton of the Middle District of Alabama has held that complete joinder is not required for Section 1452 removal. See Retirement Systems of Alabama v. J.P. Morgan Chase & Co., et al., 285 B.R. 519,   (M.D. Ala. 2002).

6

the plaintiff's choice of forum to U.S. District Court and/or its unit, the Bankruptcy Courts; and that her sole remedies were limited to those available under federal law. The creditor stated in its notice of removal:

> In the State Court Action, the Debtor seeks to recover damages based on the repossession of her Vehicle, efforts to collect the debt, and presumably violation of the permanent injunction contained in § 524(a) of the Bankruptcy Code under state law theories of conversion, breach of contract, outrage and trespass to chattels. Notwithstanding Debtor's effort to recast her claims in terms of tort and contract, this action clearly arises of, and directly relates to, the implementation and interpretation of the Court's Discharge Order. See 28 U.S.C. § 157(b)(2). Additionally, inherent in the State Court Action is Defendants' purported violation of the permanent injunction by repossessing certain property of Debtor following discharge. As such, the Bankruptcy Court is uniquely situated to hear, interpret and determine matters relating to its own Order and Defendants' alleged violation (of) that Order and the permanent injunction.(emphasis added)

However, the record does not reflect that creditors themselves sought interpretation and determination of the discharge order from this court before they invoked their alleged claim to a state law right of self-help repossession.

Sterling, on the other hand, argued that "complete preemption" could not apply to defeat the "well-pleaded complaint" rule, another doctrine applied in determining the existence of federal jurisdiction over state law suits. The plaintiff strongly opposed both removal of the lawsuit and reopening of her Chapter 13 case. She filed a motion to remand the litigation to state court which is also opposed by the defendants.

At hearing, creditors' counsel argued that the general equitable powers granted bankruptcy courts in 11 U.S.C. § 105(a)[3], coupled with Section 524's creation of the discharge injunction[4]

------

[3] **11 U.S.C. 105(a)** provides the following:

The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of

"completely preempted" Sterling's access to other causes of action.

The court heard the arguments of counsel at a January 31, 2006 hearing, after which it took the issues under submission for a decision.

**CONCLUSIONS OF LAW**

This court had jurisdiction of Sterling's Chapter 13 case under 28 U.S.C. § 1334(a). The court has initial removal jurisdiction of this lawsuit pursuant to 28 U.S.C. § 1452(a) and 28 U.S.C. § 1334(b). The jurisdiction is referred to this court under 28 U.S.C. § 157(a) by the General Order of Reference of the United States District Courts for the Northern District of Alabama, Signed July 16, 1984, As Amended July 17, 1984.

Defendants CenterOne, and Mitsubishi have asked this court to exercise jurisdiction of this state court lawsuit under the special bankruptcy removal authority of 28 U.S.C. § 1452. Mitsubishi has also moved to dismiss the plaintiff's state law complaint under Fed. R. Civ. P. 12(b)(6). The plaintiff, Sterling, opposes removal, trial in federal court, and reopening of her bankruptcy.

---

an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

[4] **11 U.S.C. 524** provides the following:

(a) A discharge in a case under this title— ...

(2) operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived; and

(3) operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect or recover from, or offset against property of the debtor of the kind specified in section 541(a)(2) of this title that is acquired after the commencement of the case, ...

While subject matter jurisdiction is in issue here, it is clear that this Bankruptcy Court has, at least, the jurisdiction to determine the scope of its own jurisdiction. In doing so, the court must also analyze the creditors' "complete preemption" argument.

Federal courts have exclusive jurisdiction of debtors' main bankruptcy cases pursuant to 28 U.S.C. § 1334(a). By statute, a debtor cannot commence a Chapter 13 "case" in state court, nor can a state court administer a bankruptcy case.

On the other hand, 28 U.S.C. § 1334(b) provides original, but not exclusive, jurisdiction over some disputes which arise during or in connection with a bankruptcy case. State court can exercise a concurrent jurisdiction on such issues.

28 U.S.C. § 1334(b) provides the following:

> Notwithstanding any Act of Congress that confers exclusive jurisdiction on a court or courts other than the district courts, the district courts shall have <u>original but not exclusive jurisdiction</u> of all civil proceedings <u>arising under</u> title 11 or arising in or related to cases under title 11. (emphasis added)

At the very least, Section 1334(b) jurisdiction must exist in order for actions to be removed from state to bankruptcy court (as a unit of district court) under Section 1452. Section 1452(a) provides the following:

> A party may remove any claim or cause of action in a civil action other than a proceeding before the United States Tax Court or a civil action by a governmental unit to enforce such governmental unit's police or regulatory power, to the district court for the district where such civil action is pending, <u>if such district court has jurisdiction of such claim or cause of action under section 1334 of this title</u>. (emphasis added)

Section 1452 bankruptcy removal is a separate and distinct removal jurisdiction from that provided by 28 U.S.C. § 1441 for cases qualifying for "federal question" or diversity jurisdiction before the district courts. Under Section 1452, defendants in a state court action may remove it to

9

the district courts, sitting/acting in their bankruptcy jurisdiction capacity; or more usually under a general reference, directly to the more jurisdictionally limited bankruptcy courts. The removal procedure set out in 28 U.S.C. § 1446 is applied to both Section 1452 and 1441 removals.

In some published cases, defendants have pleaded both § 1441 (federal question or diversity) and § 1452 (bankruptcy) removal. Business disputes often involve parties both inside and outside of the bankruptcy courts. And cases can both raise a general federal question and be under Section 1334(b) bankruptcy jurisdiction as well. However, the Sterling defendants have specifically chosen to rely only on Section 1452 removal. They have not pleaded "federal question" removal jurisdiction under Section 1441 within the 30 days allowed for doing so by Section 1446(b).

In <u>Blakeley v. United Cable System, et al.</u>, 105 F.Supp.2d 574, 579 (S.D. Miss. 2000), the court stated:

> ... [T]he courts that have addressed the issue have uniformly recognized that a defendant's ability to amend the removal petition <u>after</u> the thirty-day time limit for removal prescribed by § 1446 extends only to "amendments to correct 'technical defects' in the jurisdictional allegations in the notice of removal," and that amendments to remedy a " a substantive defect in the petition", i.e., to add a new basis for federal jurisdiction are not permitted. <u>See</u>, <u>e.g.</u> <u>Briarpatch Ltd. v. Pate</u>, 81 F.Supp.2d 509, 516-17 (S.D. N.Y. 2000) ("[f]ailure to assert federal question jurisdiction as a basis for removal is a substantive defect" which defendant may not cure by amendment after expiration of thirty-day time limit of § 1446(b)); ...

Consequently, the defendants have waived any formal claim to "federal question" removal under Section 1441, although some of their arguments appeared to address the issue.

## I.

**<u>This suit is a proper subject for removal pursuant to 28 U.S.C. § 1452,
since it implicates the Section 1334(b) "arising under"
bankruptcy jurisdiction.</u>**

**A. Neither Sterling's causes of action against CenterOne/Mitsubishi, nor her car, are property of any bankruptcy estate under this court's jurisdiction.**

10

Defendant CenterOne's detailed Notice of Removal (joined by Mitsubishi) and answer to Sterling's complaint contend that any proceeds of her lawsuit for wrongful repossession could be distributed to the unsecured creditors listed in her Chapter 13 case. Consequently, the creditor argued that resolution of the suit could impact her bankruptcy estate. That would be a basis for "related-to" jurisdiction under Section 1334(b) as predicate for Section 1452 removal.

The Eleventh Circuit Court of Appeals set the minimum standard for "related-to" jurisdiction under Section 1334(b) in Miller v. Kemira, Inc.(In re Lemco Gypsum, Inc.), 910 F.2d 784, 788 (11th Cir. 1990). The court adopted the definition found in Pacor v. Higgins, 743 F.2d 984, 994 (3rd Cir. 1984):

> ... "The usual articulation of the test for determining whether a civil proceeding is related to bankruptcy is whether the outcome of the proceeding could conceivably have an effect on the estate being administered in bankruptcy. The proceeding need not necessarily be against the debtor or against the debtor's property. An action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts the handling and administration of the bankrupt estate (emphasis added)." ...

Sterling's confirmation order provided that all property of the bankruptcy estate would vest in the debtor upon her discharge pursuant to 11 U.S.C. § 1328. Her confirmation order also means that the estate's interest in the car itself terminated with her discharge. The creditor did not object to confirmation or appeal the confirmation order. On September 6, 2005, the court entered the discharge order and estate property did vest in Sterling. The creditor filed no objection to the discharge nor did it seek to vacate or appeal the discharge order later. Consequently, her estate would no longer have an interest in prepetition or postpetition causes of action, or the car itself. See Royal v. Daihatsu (In re Royal), 197 B.R. 341, 349 (Bankr. N.D. Ala. 1996); Roddam v. Metro Loans, Inc. (In re Roddam), 193 B.R. 971 (Bankr. N.D. Ala. 1996); and Wilson v. ALFA Companies, et al. (In

11

re Wilson), 207 B.R. 241, 247 (Bankr. N.D. Ala. 1996).

11 U.S.C. § 1329 (a) also provides that "At any time after confirmation of the plan but before the completion of payments under such plan, the plan may be modified, upon request of the debtor, the trustee, or the holder of an allowed unsecured claim, ... (emphasis added)" The creditors did not request a modification of Sterling's plan before she completed her payments, before she received her discharge, or before her case was closed. Modification of her plan is no longer possible, another reason no recovery she might receive could benefit her prepetition creditors. This post-discharge cause of action belongs to Sterling alone.

Further, no acts occurring prepetition or during the active pendency of the case are in issue. In fact, the chain of events material to the Sterling dispute began after the debtor's successful completion of her confirmed plan and her September 6, 2005 discharge. By the time she filed the state case, her bankruptcy estate had ceased to exist. By December 19, 2005, when creditors removed the Sterling suit to Bankruptcy Court, no "case" existed either. It had been closed December 16, 2005.

In Old Republic Insurance Co. v. Farmer (In re Farmer), 324 B.R. 918 (Bankr. M.D. Ga. 2005), the bankruptcy court found that a personal injury claim arising out of an automobile accident which had occurred postpetition, postconfirmation, and after the debtors completed payments under their plan, was not included in "property of the estate". It appears to the court that the Sterling lawsuit and any proceeds it might generate would belong solely to Sterling – not to her Chapter 13 trustee or prepetition unsecured creditors. See In re Wilson, 207 B.R. at 247.

Since none of the proceeds that Sterling might recover in his lawsuit are property of the estate and are not subject to distribution to her discharged creditors, the lawsuit is not removable as "related

12

to" the bankruptcy case under Section 1334(b).  Reopening the case file cannot change the fact that

it is not possible for the proceeds to impact any bankruptcy estate.

**B. However, the court does have Section 1334(b) original, but not exclusive, "arising under" jurisdiction of this dispute since substantial questions of bankruptcy law will inevitably determine its outcome .**

The wording of Sterling's state court complaint makes no specific allegations that the

CenterOne defendants violated any provision of the Bankruptcy Code.  More particularly, she has

made no specific allegations that CenterOne had violated the discharge injunction of 11 U.S.C. §

524(a). In fact, she has scrupulously avoided the use of the word "discharge" or  "bankruptcy" in her

complaint.  Examples of the way she phrased her contention in the state court complaint that she was

no longer indebted to CenterOne at the time of the alleged repossession include the following:

> 7.    Plaintiff made all payments which she was legally required to make to pay off the debt made the subject of the Contract.

> 8.  ... notwithstanding the fact that Mitsubishi Credit had been paid the entire amount of its Claim.

> 9.  ...Plaintiff explained to the CenterOne  representative that she had paid for the car in its entirety. ...

> 19.  ...The Defendants knew that the Plaintiff had paid off the automobile in full. ...

> 22.  ...Plaintiff made the required payments and paid for the car in full.

(Exhibit A to AP Doc. #1)

These allegations are only true if the debt was discharged in her bankruptcy case.

In deference to the well-pleaded complaint rule,  Sterling has certainly avoided alleging any

violations of the Bankruptcy Code or any other federal statute on the face of her pleading. Sterling's

state court suit alleges purely state law causes of action.  Her four-count complaint includes the

13

following: Count 1 - Conversion; Count 2 - Outrage; Count 3 - Breach of Contract; Count 4 - Trespass to Chattels. If the court considered the wording of the complaint alone, there would clearly be no basis for removal of this case to Bankruptcy Court. The case would be remanded to state court.

The court has found no published cases which definitively answer the issues raised by the parties under the facts of this case, though much case law exists in the rough vicinity of these facts.

There are several circuit court of appeals cases dealing with similar facts, but these cases were pled differently. The plaintiffs alleged in their complaints that a creditor had violated the Section 524(a) discharge injunction, but had claimed a non-bankruptcy law remedy for the code violations. See Walls v. Wells Fargo Bank, N.A., 276 F.3d 502 (9th Cir. 2002); Cox v. Zale Delaware, Inc., 239 F.3d 910 (7th Cir. 2001); Pertuso v. Ford Motor Credit Company, 233 F.3d 417 (6th Cir. 2000); and Bessette v. Avco Financial Services, Inc., 230 F.3d 439 (1st Cir. 2000). All of the plaintiffs originally filed their lawsuits in U.S. district court as purported class actions on behalf of bankruptcy court debtors. On appeal, each of these circuit courts cases found that the debtors' sole remedy was to bring a Section 105(a) action for violation of the Section 524 discharge injunction, holding there was no private right of action provided under Section 524.

In this case, Sterling originally filed her case in state court and has made no allegations that the discharge injunction has been violated, even though the facts alleged presuppose that the debt has been discharged, and that there was an effort to collect a discharged debt.

Sterling asserted that as plaintiff she is the master of her own complaint in deciding the law she will rely upon for any recovery against the defendants. The United States Supreme Court in Franchise Tax Board of the State of California v. Construction Laborers Vacation Trust for Southern

14

California, 463 U.S. 1, 22 (1983) held that "although we have often repeated that 'the party who brings the suit is master to decide what law he will rely upon,'... (citations omitted), it is an independent corollary of the well-pleaded complaint rule that a plaintiff may not defeat removal by omitting to plead necessary federal questions in a complaint, ...(citations omitted)". The Ninth Circuit in the case of <u>Lippitt v. Raymond James Financial Services, Inc.</u>, 340 F.3d 1033, 1041 (9th Cir. 2003) referred to this removal concept based on "necessary federal questions" as the "artful pleading" doctrine, a term also used in 1980s Ninth Circuit precedents.

Every allegation in Sterling's complaint presupposes that her underlying debt to CenterOne has been discharged and that its lien on her automobile was extinguished in her bankruptcy case. These are outcome-determinative questions on every tort and contract claim she makes. That fact, though unspoken, is nevertheless apparent on the face of the complaint she filed in state court.

Sterling's grievances against the creditors will be determined by whether CenterOne still held an enforceable <u>in rem</u> interest in Sterling's car on October 15, 2005 when the creditor allegedly repossessed the vehicle and took it to Jefferson County. The status of the car's ownership – unencumbered, free and clear in favor of Sterling; or still encumbered by an <u>in rem</u> interest in favor of CenterOne -- must be resolved as a threshold question by any forum that tries this suit. In the traditional language of the law, the scope of Sterling's discharge order is the substantive gravamen of this dispute. Substantial and necessary questions of federal bankruptcy law determine the scope of the discharge.

If the secured, <u>in rem</u> debt was paid off in full under the confirmed Chapter 13 plan, any attempt by CenterOne to collect would appear to be wrongful. If there was no debt owed to CenterOne, and there was no lien on Sterling's automobile, there could have been a trespass or a

15

conversion of her property under Alabama law.  A creditor's lien can be permanently extinguished during the Chapter 13 process.  The extinguishment can permanently remove the encumbrance and that status will continue after Section 1334(a) jurisdiction ends. However, it does not represent the "paid for the car in its entirety" and similar allegations Sterling made in her complaint  which imply a state law "satisfaction" to the creditor.

Sterling has not chosen to allege specifically that the underlying debt was discharged in her bankruptcy case, or make a claim for any violation of the Bankruptcy Code in her state complaint. She has not sought amendment of the removed complaint in this Bankruptcy Court to do so.

However, this court cannot ignore the fact that all legal issues in this dispute turn on substantial questions of federal bankruptcy law - the effect of 11 U.S.C. § 1325 confirmation of Sterling's plan on CenterOne's contractual rights; the effect of Sterling's discharge under 11 U.S.C. § 1328 on CenterOne's in rem rights in her automobile; or the 11 U.S.C. §524 effects of Sterling's discharge injunction.  These underlying issues are removable matters under 28 U.S.C. § 1452 which "arise under" the Bankruptcy Code, in the same way that general federal questions "arise under" federal law, the Constitution, and treaties for 28 U.S.C. § 1441 removal.

The United States Supreme Court in Merrell Dow Pharmaceuticals, Inc.  v. Thompson,  478 U.S. 804, 808 (1986) held that a case can arise under federal law if a state court cause of action depends upon the resolution of a substantial question of federal law.  The case involved the Section 1331 general federal question jurisdiction of the district court, and not the Section 1334(b) "arising under" jurisdiction of the bankruptcy courts. However, its reasoning is instructive. The court emphasized the narrow construction to be used in identifying this class of cases. This is not a broad grant of jurisdiction.

16

As a court stated in <u>Ormet Corporation v. Ohio Power Company</u>, 98 F.3d 799, 806 (4th Cir. 1996) "there is a small class of cases where, even though the cause of action is not created by federal law, the case's resolution depends on resolution of a federal question sufficiently substantial to arise under federal law within the meaning of 28 U.S.C. Section 1331". <u>Ormet</u> was interpreting the Supreme Court's <u>Franchise Tax Board</u> and <u>Merrell Dow.</u>

The court is convinced the Bankruptcy Court's own "arising under" Section 1334(b) jurisdiction is sufficient to support defendants' removal pursuant to 28 U.S.C. § 1452(a).

As stated in <u>Beneficial National Bank v. Anderson</u>, 539 U.S. 1, 8 (2003):

> Thus, a state claim may be removed to federal court in only two circumstances – when Congress expressly so provides, such as in the Price-Anderson Act, <u>supra</u>, at 2062, or when a federal statute wholly displaces the state-law cause of action though complete pre-emption. ... n. 3 Of course, a state claim can also be removed through the use of the supplemental jurisdiction statute, 28 U.S.C. § 1367(a), provided that another claim in the complaint is removable.

Congress "expressly" provided this court a concurrent jurisdiction with state courts under Section 1334(b) and then provided a special removal statute under Section 1452 which depended on that jurisdiction. Under 28 U.S.C. § 1367(a), if a state suit is removable as to one issue, the district court may also exercise pendent jurisdiction of state law causes of action in the complaint.

## II.

### While the court can exercise jurisdiction of this suit, it declines to extend the "complete preemption" doctrine to state law affecting creditor/former debtor relations after bankruptcy.

CenterOne's main arguments for removal to federal court appeared to be that either the Bankruptcy Code, in general; or Sections 524 and 105, in particular, have completely preempted all Sterling's state law remedies for an indefinite period.

17

When "complete preemption" takes place, all of the plaintiff's state remedies are totally displaced by federal law; and, by operation of law, converted to a federal cause of action. In this case, "complete preemption", arguably, would "convert" all of Sterling's state claims into whatever remedy could be found under the Bankruptcy Code. If that logic were adopted, the Bankruptcy Court/district court would have "arising under" jurisdiction of this dispute and Sterling's damages would be limited to those available for Section 524 violation as enforced by the court under 11 U.S.C. § 105(a). If the former debtor/plaintiff declined to amend her complaint to state such a federal claim, her suit would have to be dismissed since it would not state a claim for which federal relief could be granted.

11 U.S.C. § 524 creates the discharge injunction but does not specifically set out any private remedies for its violation. The Sixth Circuit Court of Appeals in Pertuso v. Ford Motor Credit Company, 233 F.3d 417 (6th Cir. 2000), for example, found there was no private right of action for violation of the discharge injunction. The Eleventh Circuit of Appeals has not specifically ruled on whether a private right of action exists for violations of the discharge order. However, the appeals court has ruled that a bankruptcy court has the power to award "coercive" damages for violations of the Section 524 discharge injunction through its statutory contempt/equitable powers under 11 U.S.C. § 105(a). See Hardy v. Internal Revenue Service, (In re Hardy) 97 F.3d 1384 (11th Cir. 1996).

The Court in Hardy quoted from a companion precedent, Jove Engineering, Inc. v. Internal Revenue Service, (In re Jove) 92 F.3d 1539 (1996) (involving remedies for violation of the automatic stay). The Court said in Hardy that:

Section 105 grants statutory contempt powers in the bankruptcy context, stating "The court

may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). Section 105 creates a statutory contempt power, distinct from the court's inherent contempt powers in bankruptcy proceedings, for which Congress unequivocally waives sovereign immunity. Jove, 92 F.3d at 1553. The language of § 105 encompasses "any type of order, whether injunctive, compensative or punitive, as long as it is 'necessary or appropriate to carry out the provisions of the Bankruptcy Code." Id. At 1553-54. Therefore, "§ 105(a) grants courts independent statutory powers to award monetary and other forms of relief for automatic stay violations to the extent such awards are 'necessary and appropriate'" to carry out the provisions of the Bankruptcy Code." Id. ... (emphasis added)

... In Jove, this court adopted a two-pronged test to determine willfulness in violating the automatic stay provision of § 362. Under this test, the court will find the defendant in contempt if it: "(1) knew that the automatic stay was invoked and (2) intended the actions which violated the stay." Jove, 92 F.3d at 1555. This test is likewise applicable to determining willfulness for violations of the discharge injunction of § 524. (emphasis added)

Hardy, 97 F.3d at 1389-90.

The U.S. Internal Revenue Service was the defendant in both of these cases. Jove discussed the Bankruptcy Court's Section 105(a) powers in connection with an alleged violation of the Section 362(a) automatic stay. In Hardy, the Eleventh Circuit reversed a district court finding of no jurisdiction in an action for violation of the discharge order. It remanded the case to the district court stating: "The court may find IRS in contempt under § 105 by finding that the IRS acted willfully, according to the test set forth in the companion case of Jove." Hardy, 97 F.3d at 1391.

The defendants have argued that the 2003 case of Beneficial National Bank v. Anderson, 539 U.S. 1 (2003) requires the court to find that Sterling's only remedy is available through Section 524 and 105(a) by Anderson's broadening the applicability of the doctrine of "complete preemption." This court cannot read Anderson or subsequent Supreme Court of the United States or Eleventh Circuit precedent to authorize, much less require, this sweeping result. See Aetna Health Inc. v. Davila. 542 U.S. 200 (2004); and Dunlap, et al. v. G&L Holding Group Incorporated, et al., 381 F.3d

19

1285 (11th Cir. 2004).

Anderson resolved an important, but narrowly drawn, question on the scope of the general federal question jurisdiction of the district courts. The Supreme Court's holding involved serious constitutional questions of separation of powers and of federalism. The judgment required consideration of the potential for judicial interference with Congress's power to determine the jurisdiction of lower federal courts, and with the states' normally plenary jurisdiction to resolve disputes in their own courts. CenterOne's "complete preemption" contentions in reference to the Bankruptcy Code implicate these same constitutional issues.

In 1991, the Eighth Circuit Court of Appeals held that Section 86 of the federal National Bank Act (NBA) had completely preempted all state law usury claims in M. Nahas & Co. Inc. v. First National Bank of Hot Springs, 930 F.2d 608, 612 (8th Cir. 1991). It was the first and only lasting circuit court precedent on this issue until the Eleventh Circuit's Anderson decision in 2002. However, the theory of "complete preemption" had been extensively litigated in many state law vs. federal law situations. The courts had arrived at differing outcomes.[5]

Prior to 2003, the Supreme Court had limited "complete preemption" to two areas of federal/state law – (1) claims involving labor/management relations governed by Section 301 of the Labor Management Relations Act of 1947, and (2) claims under benefit plans governed by the

---

[5]In the bankruptcy context, many cases involved the impact of defective reaffirmation agreements on the scope of the discharge. See Bessette v. AVCO Financial Services, Inc. , 230 F.3d 439 (1st Cir. 2000); Pertuso v. Ford Motor Credit Company, 233 F.3d 417 (6th Cir. 2000); Cox v. Zale Delaware, Inc., 239 F.3d 910 (7th Cir. 2001); and Walls v. Wells Fargo Bank, N.A., 276 F.3d 502 (9th Cir. 2002) (all purported class actions filed in federal court originally and pleading discharge violation specifically); as well as in other contexts, including the pre-Anderson MSR Exploration, Ltd. v. Meridian Oil, Inc., et al., 74 F.3d 910 (9th Cir. 1996). While these cases offer surface similarities to Sterling case, none are sufficiently on point factually or legally to render even persuasive guidance to this court.

20

Case 05-70060-CMS   Doc 29   Filed 05/12/06   Entered 05/12/06 15:06:43   Desc Main
Document   Page 20 of 27

Employee Retirement Income Security Act of 1974 (ERISA). (29 U.S.C. §§ 1001 et seq.)

Textually, Anderson, itself, set a much narrower precedent than CenterOne asks this Bankruptcy Court to adopt. That is shown by the way Justice Stevens phrased the issue:

> The question in this case is whether an action filed in a state court to recover damages from a national bank for allegedly charging excessive interest in violation of both "the common law usury doctrine" and an Alabama usury statute may be removed to a federal court because it actually arises under federal law. We hold that it may.

Anderson, 539 U.S. at 3-4.

The Anderson plaintiffs had sued alleging that their tax preparer H&R Block Inc., and the bank had colluded to overcharge them for loans secured by the tax refunds H&R Block computed. They had sued in state court under Alabama's common law and statutory usury prohibitions.

With the law in an unsettled state, the District Court for the Middle District of Alabama, declined to remand the removed Anderson complaint to state court, but certified the issue of its own federal question jurisdiction directly to the Eleventh Circuit Court of Appeals. See Anderson v. H&R Block, et al., 287 F.3d 1038, 1042 (11th Cir. 2002), rev'd by Beneficial National Bank, et al. v. Anderson, 539 U.S. 1 (2003).

The Eleventh Circuit's 2002 answer to the question later posed by Justice Stevens was "no." The circuit court held that complete preemption of state law had not taken place, and the lawsuit was not a proper subject for general federal question removal under 28 U.S.C. § 1441. A three-judge panel ruled two-to-one that the existence of a federal defense (compliance with Sections 85 and 86 of NBA) to the state law claims was only "ordinary," not "complete," preemption; and that the federal issue could be properly raised and adjudicated in state court. Traditionally, a federal defense, without more, did not defeat the "well-pleaded complaint" rule to allow removal to federal court

21

under Section 1441 over the plaintiff's objection. See Anderson, 539 U.S. at 6; Silkwood v. Kerr-McGee Corporation, 464 U.S. 238, 248 (1984), and Caterpillar, Inc. v. Williams, 482 U.S. 386, 393 (1987).

In Anderson, the Supreme Court reached the opposite legal conclusion based on the same facts and law, and reversed the Eleventh Circuit. It had granted certiorari to resolve the one-one split of authority at circuit court level. The Court's 2003 ruling came on a 7-2 vote, with Justices Scalia and Thomas dissenting.

The Supreme Court in Anderson then set out two distinct instances when state claims may be removed to federal court under general federal question jurisdiction:

> Thus, a state claim may be removed to federal court in only two circumstances-when Congress expressly so provides, such as in the Price-Anderson Act, supra, at 2062, or when a federal statute wholly displaces the state-law cause of action through complete preemption... In the two categories of cases where this Court has found complete pre-emption - certain causes of action under the LRMA and ERISA-the federal statutes at issue provided the exclusive cause of action for the claim asserted and also set forth procedures and remedies governing that cause of action. See 29 U.S.C. § 1132 (setting forth procedures and remedies for civil claims under ERISA); § 185 (describing procedures and remedies for suits under LRMA)... Sections 85 and 86 serve distinct purposes. The former sets forth the substantive limits on the rates of interest that national banks may charge. The latter sets forth the elements of a usury claim against a national bank, provides for a 2- year statute of limitations for such a claim, and prescribes the remedies available to borrowers who are charged higher rates and the procedures governing such a claim..."

Anderson, 539 U.S. at 8, 9.

As shown by the briefings of the parties and the court's own research, the decision has sparked much litigation – involving a wide array of federal/state legal interaction, in addition to cases involving national banks. Defendants who favor federal fora and/or the perceived limited damages available there have argued strongly for expansion of the Anderson rule. The judgments of the courts

22

in other jurisdictions have not been consistent, including those involving bankruptcy.[6]  None have

been  factually or legally identical enough to Sterling to provide much persuasive authority.

While the Eleventh Circuit Court of Appeals has not yet applied the Supreme Court's

Anderson rule to a case involving Sections 85 and 86 of NBA, it has stated a post-Anderson

definition of where  "complete preemption" now applies. See Dunlap v. G&L Holding Group

Incorporated, et al., 381 F.3d 1285 (11th Cir. 2004). The court stated:

> The Supreme Court has admonished that federal law should be found to completely preempt
> state law "only in statutes with 'extraordinary' preemptive force." Geddes, 321 F.3d at 1353.
> To date the Supreme Court has identified only three statutes that completely preempt related
> state-law claims: (1) § 301 of the Labor Management Relations Act, 29 U.S.C. § 185; (2) §
> 1132 of the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001, et seq.;
> and (3) §§ 85 and 86 of the National Bank Act, 12 U.S.C. § 21 et seq. See Beneficial Nat'l
> Bank v. Anderson, 539 U.S. 1, 7-11, 123 S.Ct. 2058, 2062-64, 156 L.Ed.2d 1 (2003). The
> Court found that complete preemption applied to those statutes because all three "provided
> the exclusive cause of action for the claim asserted and also set forth procedures and
> remedies governing that cause of action." Id. at 8, 123 S.Ct. 2063. Accordingly, the
> "touchstone" of federal question jurisdiction based on complete preemption is congressional
> intent. ...

Dunlap, 381 F.3d at 1291.

The Sterling action does not involve a debtor-creditor dispute during the pendency of the

bankruptcy case.  The facts giving rise to this dispute allegedly occurred after Sterling's bankruptcy

case was completed and she was granted a discharge.  The case was not removed until after the

bankruptcy case had been closed.  Neither United States Supreme Court nor Eleventh Circuit cases

mention the Bankruptcy Code or any individual section of the code as "extraordinary preemptive

---

[6] See Nelson, et al. v. Stewart, et al., 422 F.3d 463 (7th Cir. 2005) (11 U.S.C. 1114 did not
completely preempt retirees' state law causes of action against their own union for negligent
representation in former employer's Chapter 11); but see Miles, et al. v. Okun, et al. (In re
Miles), 430 F.3d 1083 (9th Cir. 2005) (11 U.S.C. 303(I) completely preempted state law remedies
when Bankruptcy Court had already ruled on liability and specifically retained jurisdiction to
liquidate damages.)

force" as to completely preempting state law matters. Their holdings do show that complete preemption is the exception and not the rule. This court declines to extend the application of complete preemption to this post discharge debtor creditor dispute.

The Sterling case was properly removed under 28 U.S.C. § 1452 because resolution of all the state law issues depends on substantial questions of federal bankruptcy law (the effect of 11 U.S.C. § 1325 confirmation of Sterling's plan on CenterOne's contractual rights; the effect of Sterling's discharge under 11 U.S.C. § 1328 on CenterOne's <u>in rem</u> rights in her automobile; and the effect of the 11 U.S.C. § 524 discharge). These are all matters "arising under" the Bankruptcy Code. Section 1334(b) expressly provides that the District Court "shall have original but not exclusive jurisdiction" of such "arising under" disputes. The question now is whether this bankruptcy court should or should not remand this suit to Jefferson County Circuit Court for equitable reasons as provided under Section 1452(b).

**III.**

**In the interest of judicial economy and for other equitable reasons, the court will retain jurisdiction of this lawsuit pursuant to 28 U.S.C. §§ 1452(b) and 1334(b)**.

28 U.S.C. § 1452(b) provides the following:

The court to which such claim or cause of action is removed <u>may remand such claim or cause of action on any equitable ground</u>. An order entered under this subsection remanding a claim or cause of action, or <u>a decision to not remand</u>, is not reviewable by appeal or otherwise by the court of appeals under section 158(d), 1291, or 1292 of this title or by the Supreme Court of the United States under section 1254 of this title. (emphasis added)

Generally, bankruptcy courts have analyzed all the circumstances of each case as they balance the equities of the remand question under Section 1452. The logical framework used by this and many other bankruptcy courts originated in <u>Browning v. Navarro</u>, 743 F.2d 1069, 1077 at n. 21 (5th

24

Cir. 1984).[7]  The analysis in this case is more difficult than usual, even excluding the novel question of "complete preemption".

The heart of Sterling's complaint is the legal consequences of the confirmation of her plan and the entry of her discharge as they relate to the rights of CenterOne.  These are questions which are addressed by bankruptcy courts on a daily basis.  They are issues which state courts would probably prefer never to deal with;  and, when they must deal with them, do so rarely.  Not only does the bankruptcy court have more expertise on these questions, but the bankruptcy court ruling on these issues would lessen the likelihood of inconsistent results between federal and state court.

The removal of this case to bankruptcy court does not create a forum nonconveniens problem for either party.  Sterling lives and works in Tuscaloosa County.  The creditors have asked that the case be heard in Tuscaloosa County. Therefore retention of the case here does not impose additional hardship for plaintiff or defendants.

This action has not been bifurcated by its removal to bankruptcy court.  There is no longer a case in state court by virtue of its removal to this court.  See Federal Rule of Bankruptcy Procedure 9027.  Therefore, bifurcation is not a factor in deciding whether this case should be remanded.  The

---

[7] The Browning factors (in this court's paraphrase) include the following issues: 1. Does removal create a forum non conveniens problem or vice versa?; 2. If a civil action has been bifurcated by removal, the entire action should be tried by the same court.; 3. Is one court better than another for resolving the legal questions raised?; 4. Does one court have a more useful expertise in trying the particular questions raised by the removed case?; 5. Will use of two forums result in duplicative and uneconomical use of judicial resources?; 6. Will the involuntarily removed parties be prejudiced?; 7. As in all such decisions, the court should be sensitive to issues of comity with state courts.; 8. As much as possible, the court's remand decision should lessen the possibility of inconsistent result.

The Fifth Circuit, in the 1984 case, was considering former 28 U.S.C. 1478, which was reenacted as a somewhat amended 28 U.S.C. 1452(b). The "... may remand such claim or cause of action on any equitable ground" language has continued forward unchanged in the current statute.

Case 05-70060-CMS    Doc 29    Filed 05/12/06    Entered 05/12/06 15:06:43    Desc Main
Document      Page 25 of 27

action filed in Jefferson County Circuit Court was immediately removed to bankruptcy court. Therefore, the Jefferson County court has not used any judicial resources in this case. All matters since the action was filed have been in the bankruptcy court which has now reacquainted itself with the underlying bankruptcy case, as well as this post discharge lawsuit. This would favor the case remaining in bankruptcy court.

The complicated question to be resolved is the core vs. noncore nature of these proceedings. To the extent matters are core proceedings, the bankruptcy court can enter final judgments. To the extent that matters are noncore proceedings, then the bankruptcy court only makes recommended findings of facts and conclusions of law and sends them to the District Court for consideration. There is also a jury demand and bankruptcy court does not try jury cases without the consent of all parties. If, in fact, a jury trial appears necessary, then the bankruptcy court may still hear and enter final orders on all pretrial motions, including outcome determinative summary judgment motions. After all pretrial motions are resolved, the bankruptcy court then can send any remaining matters to be tried by a jury in the U.S. District Court. While this complicates the procedural handling of the case, the court believes that the importance of the underlying bankruptcy questions outweighs any procedural complications.

For these reasons and with due regard to comity considerations with state courts, the bankruptcy court declines to remand AP05-70060 to Jefferson County Circuit Court.

## CONCLUSION

The court declines to remand this removed lawsuit to Jefferson County Circuit Court where it was filed. Consequently, Sterling's **MOTION TO REMAND or ABSTAIN and MOTION TO EXPEDITE CONSIDERATION of SAME** (AP Doc. 8) must be **DENIED**.

26

Orders, consistent with these findings pursuant to Fed. R. Bankr. P. 7052, will be entered separately.

**DONE and ORDERED** this May 12, 2006.

/s/ C. Michael Stilson
C. Michael Stilson
United States Bankruptcy Judge

Case 05-70060-CMS    Doc 29    Filed 05/12/06    Entered 05/12/06 15:06:43    Desc Main
Document      Page 27 of 27